## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JEAN-MICHEL BARTOLO,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Case Nos.**   **17-cv-1453 (APM)** |
| ) | **18-cv-1681 (APM)** |
| **WHOLE FOODS MARKET GROUP, INC.,** ) | |
| ) | |
| *Defendant.* ) | |

## DEFENDANT'S MOTION TO STRIKE AND
## EXCLUDE EXPERT TESTIMONY OF STAN V. SMITH

**GREENBERG TRAURIG, LLP**

Gregory J. Casas
Bar No. 455329
300 West 6th Street, Suite 2050
Austin, Texas 78701

Michael A. Pusateri
Bar No. 1005463
2101 L Street, N.W., Ste. 1000
Washington, DC 20037

**WHOLE FOODS MARKET SERVICES, INC.**

John H. Hempfling, II
(Admitted *Pro Hac Vice*)
Vice President, Associate General Counsel,
Litigation
828 West Sixth Street, Suite 200
Austin, Texas 78703

**TABLE OF CONTENTS**

FACTS AND BACKGROUND ................................................................................. 1

     A.     Stan Smith............................................................................................. 1

     B.     Relevant Facts....................................................................................... 4

     C.     Relevant Legal Authorities .................................................................. 5

II.      THE SMITH REPORT SHOULD BE EXCLUDED AS UNRELIABLE ........................ 8

     A.     The Smith Report's Assumptions and Projections ................................ 8

     B.     Analysis of Smith Report Under Relevant Legal Standards................................ 10

          1.     Smith's Conclusions are Based on Insufficient Data and Assumptions.............................................................................. 10

          2.     Smith's Methodology is Unreliable ........................................ 14

III.     SMITH'S TESTIMONY IS IRRELEVANT AND WILL NOT ASSIST THE TRIER OF FACT........................................................................................... 16

CONCLUSION.................................................................................................. 18

*ACTIVE 47358481v3*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Disaster at New Orleans*,
   795 F.2d 1230 (5th Cir. 1986) .......................................................................5, 7, 14, 16, 17

*Ancho v. Pentek Corp.*,
   157 F.3d 512 (7th Cir. 1998) ............................................................................17

*Bazarian Int'l Financial Assoc., LLC v. Desarrollos Aerohotelco, C.A.*,
   315 F. Supp. 3d 101 (D.D.C. 2018) .................................................................17

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ............................................................................6, 16

*Bourjaily v. United States*,
   483 U.S. 171 (1987) ...........................................................................................6

*Castrillon v. St. Vincent Hosp. and Health Care Center, Inc.*,
   2015 WL 3448947 (May 29, 2015, S.D. Ind.) ..........................................2, 3, 13, 17

*Coleman v. Parkline Corp.*,
   844 F.2d 863 (D.C. Cir. 1988) ..........................................................................7

*Crawford v. Franklin Credit Management Corp.*,
   2015 WL 13703301 (January 22, 2015, S.D.N.Y) .......................................3, 4, 17

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ...........................................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 579 (1993) ............................................................................1, 6, 7, 10

*Feit v. Great-West Life & Ann. Ins. Co.*,
   460 F. Supp. 2d 632 (D.N.J. 2006) ....................................................................5

*Estate of Gaither by & through Gaither v. D.C.*,
   2013 WL 12320079 (D.D.C. Sept. 11, 2013) .....................................................6

*Glisson v. Correctional Medical Services, Inc.*
   2018 WL 6807295 (Dec. 27, 2018, S.D. Ind.) ..................................................17

*Griffo v. Oculus VR, Inc.*,
   2018 WL 6265067 (C.D. California, September 18, 2018)..........................1, 2, 12

*Joy v. Bell Helicopter Textron, Inc.*,
   999 F.2d 549 (D.C. Cir. 1993) .............................................................5, 7, 10, 15

*Keys v. WMATA*,
   577 F. Supp. 2d 283 (D.D.C. 2008) ............................................................6, 14

*ACTIVE 47358481v3*

*Little v. Washington Metropolitan Area Transit Authority*,
    249 F. Supp. 3d 394 (D.D.C. 2017) ................................................................6, 13

*Meister v. Med. Eng'g Corp.*,
    267 F.3d 1123 (D.C. Cir. 2001) ........................................................................6

*Parsi v. Daioleslam*,
    852 F. Supp. 2d 82 (D.D.C. 2012) ..............................................................6, 7, 15

*Price v. Folks*,
    2016 WL 4138209 (Nev. Dist. Ct. 2016) ........................................................13, 16

*Shatkin v. McDonnell Douglas Corp.*,
    727 F.2d 202 (2d Cir. 1984) ............................................................................6

*Smith v. Dorchester Real Estate, Inc.*,
    732 F.3d 51 (1st Cir. 2013) ..........................................................................4, 5

*United States v. Gatling*,
    96 F.3d 1511 (D.C. Cir. 1996) ........................................................................7

**Other Authorities**

Fed. R. Evid. 403 ............................................................................................7

Fed. R. Evid. 702 ..........................................................1, 5, 6, 7, 10, 14, 16, 17

Fed. R. Evid. 703 ............................................................................................6

*ACTIVE 47358481v3*

Defendant Whole Foods Market Group, Inc. ("Whole Foods") moves to strike and to preclude Stan V. Smith from offering expert opinion testimony at trial on behalf of Plaintiff Jean-Michel Bartolo.  Smith's report, and therefore his testimony, is based on unsupported speculation and subjective belief without a factual basis.  Indeed, his opinion is based on nothing more than simple math, and the *ipse dixit* assertion that he must be correct because he is the expert.

As set out below, Smith's faulty and unsupported assumptions and methodologies warrant his report's exclusion under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993) and related subsequent cases.  *See e.g.*, *Griffo v. Oculus VR, Inc.,* 2018 WL 6265067, at *6 (C.D. California, September 18, 2018) (striking Smith's expert opinion).[1]  Just as in *Griffo,* this Court should find—as indeed no fewer than *twenty* other Courts have—that Smith's opinion and testimony is not helpful to the jury, does not satisfy Rule 702, and should not be allowed.[2]

## FACTS AND BACKGROUND

### A.    Stan Smith

Stan Smith is an economist and is essentially a professional testifier.  (*See* Ex. A to Smith report, detailing the hundreds of cases in which he has testified; Smith Dep. at 7:11-13).  Smith has been subject to numerous motions to strike over the years, none of which Smith can recall (Smith Dep. at 5:25-6:19).  His expert opinions have been struck in excess of twenty times.  In the

---

[1] Smith's report is limited to the calculation of lost wages.  He has offered no opinion as to Bartolo's alleged damages related to his defamation claim.  Should Smith attempt to opine on these damages, Whole Foods reserves the right to move to strike that opinion not only because it was not timely disclosed, but also because Smith's alleged expert testimony with regard to such damages has been repeatedly struck for being speculative and unfounded.

[2] Defendant files this motion as a stand-alone motion to strike and to exclude testimony. In the alternative, Defendant submits this motion as the first of several Motions in Limine it intends to file by the Court's deadline of January 16, 2020.  (Dkt. 62).

*ACTIVE 47358481v3*

past, these rulings have focused on his testimony regarding hedonic damages, which was regularly excluded. When it comes to his non-hedonic damages calculations, the challenges, like here, focus on his lack of a reliable basis for his calculations—poor research, rank speculation, unsupported assumptions, and incomplete underlying facts from which to draw a conclusion that would be helpful to a jury. Courts regularly strike Smith's opinions regarding non-hedonic damages as well. A sampling of these cases is instructive.

In *Griffo v. Oculus VR, Inc.*, 2018 WL 6265067 (Sept. 18, 2018, C.D. Cal.) for example, Smith was retained to offer testimony about damages in a copyright infringement case. There, plaintiff sued alleging defendants used portions of her video in a Kickstarter campaign to raise funding for a virtual reality headset. Plaintiff retained Smith to testify about how much of defendant's revenue stream should be allocated to damages related to the alleged copyright infringement. Smith had never testified in a case involving crowdfunding, video games, virtual reality or head-mounted displays, and he had never been qualified as an expert on venture capital. *Id.* at *6.

Smith relied on discovery responses, pleadings, deposition transcripts and a contractual agreement for his calculations. Somehow, he determined that the copyright infringement accounted for 20 percent of the venture capital revenue stream. *Id.* The court was unpersuaded. The Court struck the report, stating that it "contains unsupported speculation and subjective belief without the factual basis for the opinion. Nowhere in the report did Smith provide the facts underlying the 20 percent calculation." *Id.* at *7.

Smith's opinion was also struck in *Castrillon v. St. Vincent Hosp. and Health Care Center, Inc.*, 2015 WL 3448947 (May 29, 2015, S.D. Ind.). In that case, Smith was retained to determine plaintiffs lost wages suffered when she was allegedly wrongfully terminated from her medical

2

residency.  Smith calculated the value of salary, including benefits, that plaintiff would have earned for the remainder of her residency, then during a critical care fellowship, and finally as a practicing critical care specialist until she was 81.9 years old (her life expectancy) and compared that to the value of the average annual earnings for white, non-Hispanic females ages 35-44 with a bachelor's degree during that same time period.  *Id.* at *2.  The Court struck the opinion because the calculations were based on speculation with no evidentiary basis whatsoever.  According to the Court, "the Court has, and the jury will have, no idea what percentage of residents who apply for a critical care fellowship are accepted, what qualifications successful applicants have, and whether Plaintiff was likely to have those qualifications." *Id.*  Absent any facts, the Court determined that Smith's opinion may have been based purely on plaintiff's "pipe dream" of becoming a critical care specialist.

Smith's report was also struck in *Crawford v. Franklin Credit Management Corp.,* 2015 WL 13703301 (January 22, 2015, S.D.N.Y).  In that case, Smith was retained to calculate the value of lost wages and employee benefits of the plaintiff had she gone to medical school.  He assumes that plaintiff got into and attended medical school, graduated, passed her medical boards, and found employment as a general practitioner. *Id.*at *7. The court held that Smith's report was based on too may "questionable assumptions, which in combination render Smith's testimony speculative and conjectural. *Id.* (internal quotations and citations omitted).  For example, Smith assumed that the plaintiff would attend medical school and graduate, pass her licensure exam, and find a job.  He did not account for the employment rates for students graduating from that school, and instead assumed that at the time of graduation, there would be a shortage of physicians.  "Although reliance on a single, reasonable assumption, by itself, might go only to weight, and not

3

admissibility….in combination, these numerous, dependent assumptions render Smith's testimony with respect to lost wages speculative and thus inadmissible." *Id.* at *8 (citations omitted).

Finally, a district court ruling allowing Smith's opinion was reversed in *Smith v. Dorchester Real Estate, Inc.,* 732 F.3d 51 (1st Cir. 2013). In that case, plaintiff sued for injuries allegedly suffered due to a failed real estate scheme. Smith was hired to opine on hedonic damages, which was struck, and also as to plaintiff's loss of credit expectancy. Smith opined that the scheme cost plaintiff the ability to borrow up to twice his annual income at an interest rate of 12 percent. There was no factual support for these calculations, as his opinion was nothing more than speculation, unsupported by facts that even indicated that the plaintiff had applied for credit and been denied. As a result, the court of appeals determined that it was error to have allowed Smith to testify, reversed the trial court's decision, and remanded. *Id.* at 68.

Smith's opinion in this case follows a similar pattern to the cases described. Accordingly, Smith's opinion and testimony in this case should also be struck and should not be presented to the jury.

### B.    Relevant Facts

As the Court is aware from the recent summary judgment briefing, plaintiff was terminated for cause on February 14, 2017. *See* Ex. 3, Wescoe Dep. at 65:8-16. At the time of his termination, Plaintiff was paid a base salary of $130,187. *See* Smith Ex. 1 at 3. During his employment as an STL, Plaintiff was eligible to receive an Economic Value Added ("EVA") bonus, which is a bonus paid quarterly to reward store team leaders and assistant store team leaders, and is calculated based upon a given store and region's profitability on a quarterly basis. *See* Grady Ex. 6 at 3-5. The Court has already held, as a matter of law, that Plaintiff did not earn this bonus for the second fiscal quarter of 2017. *See* September 30, 2019 Memorandum Opinion and Order (Dkt. 60) at 22-

4

25; *id*. at 24 ("It defies logic to suggest that Defendant could pay money that was not yet earned…").  He also failed to earn the bonus several other times during his tenure as a result of his store's poor performance.  *See* Ex. 4, Martinez Declaration, at 2.

On or about June 29, 2017, Plaintiff began working at grocery chain Harris Teeter as an Assistant Manager, making $75,000 annually.  *See* Ex. 5, Bartolo Depo. at 102: 5-7; 110:4-7. Plaintiff has continued to look for employment through at least September 2017 and hopes to leave his Assistant Manager position at Harris Teeter for a more attractive position elsewhere. *Id.* at 93:19-95:17; 97:11-99:19. In applying to at least one of these prospective employers, Plaintiff indicated his desired pay was "USD $75,000.00/Yr." for 50 hours of work per week. *Id.* at 16.

## C.      Relevant Legal Authorities

A proposed expert should be excluded when his opinions are "based solely on guesswork, speculation, and conjecture." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 568 (D.C. Cir. 1993) ("there is little, if any, basis in the record for [the expert's] estimates of [plaintiff's] future earning capacity."); *see also In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986) (finding that plaintiffs' economist was "abusive of the known facts" and failed to provide a reasonable basis for calculating how much of the decedent's income would have found its way into assets or savings to be inherited by his children.) "Courts need not admit bare conclusions or mere assumptions proffered under the guise of 'expert opinions.'" *Feit v. Great-West Life & Ann. Ins. Co.*, 460 F. Supp. 2d 632, 637 (D.N.J. 2006).

Fed. R. Evid. 702 governs the report's admissibility, providing:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the evidence is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods,

5

and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Court's role is to act as a "gatekeep[er]," excluding any expert testimony that is not sufficiently reliable or helpful to the jury. *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 85 (D.D.C. 2012) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)).  Under the *Daubert* test, "expert testimony <u>must</u> be excluded if (1) it is not reliable; or (2) not relevant."  *Keys v. WMATA*, 577 F. Supp. 2d 283, 285 (D.D.C. 2008) (emphasis added).  The trial court's gatekeeping function requires more than "taking the expert's word for it… The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." *Little v. Washington Metropolitan Area Transit Authority*, 249 F. Supp. 3d 394, 414 (D.D.C. 2017) (quoting Fed. R. Evid. 702 Advisory Committee's Notes on 2000 Amendment).  Fed. R. Evid. 703, which lays out the bases of expert opinion, provides district courts with the discretion "to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996), (*quoting Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984)). The proponent of the testimony bears the burden of establishing its admissibility.  *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

Under the reliability prong, a court must determine whether the expert testimony is "derived by the scientific method" and "supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known."  *Estate of Gaither by & through Gaither v. D.C.*, 2013 WL 12320079, at *2 (D.D.C. Sept. 11, 2013) (citing *Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 (D.C. Cir. 2001)).  Under the relevance prong, a court must determine whether the testimony "will assist the trier of fact to understand or determine a fact in issue." *Id.* at *2.

6

Moreover, the Court should not simply assume that the jury can see through an expert's failure to provide a legitimate expert opinion.  A court "must resist the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it the weight 'it deserves.'"  *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 569 (D.C. Cir. 1993) (internal quotations and citations omitted).  In cases such as this, the court should not adopt a "let it all in" philosophy, but rather should prevent such speculation and unsupported testimony from being presented to the jury.  *Id.* (citing *In Re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1234, (5th Cir. 1986) and *Coleman v. Parkline Corp.,* 844 F.2d 863, 867 n.3 (D.C. Cir. 1988)).

Even if proposed expert testimony comports with Fed. R. Evid. 702, it may nonetheless be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 86 (D.D.C. 2012) (citing *United States v. Gatling,* 96 F.3d 1511, 1523 (D.C. Cir. 1996)). Moreover, because "[e]xpert evidence can be both powerful and quite misleading," a court has greater leeway in excluding expert testimony under Rule 403 than it does lay witness testimony.  *Daubert,* 509 U.S. at 595 (internal quotation marks and citation omitted).

As referenced above, no fewer than 20 courts have applied these principles to exclude Smith as a damages expert.  Those courts recognized, as this one should, that Smith's report will not assist the jury and is not premised on reliable principles or methods.  Instead, the Report is based on assumptions and speculation, and lacks sufficient facts and data to support Smith's conclusions.  For these reasons, the Smith Report fails under Fed. R. 702, *Daubert*, and Fed. R. Evid. 403, and accordingly, Smith should be excluded from offering expert testimony at trial.

7

## II.     THE SMITH REPORT SHOULD BE EXCLUDED AS UNRELIABLE

### A.     The Smith Report's Assumptions and Projections

The Smith Report attempts to assess the value of lost wages and benefits arising from Plaintiff's February 14, 2017 termination.  *See* Smith Ex. 1, generally.  In assessing these purported damages, Smith reviewed and relied upon only the information Bartolo chose to provide him.  That was limited to:  a one-hour interview Smith's staff conducted with Plaintiff; Plaintiff's 2012 and 2013 W-2 forms; Plaintiff's 2012-2016 tax returns, Plaintiff's October 10, 2017 Harris Teeter pay stub; and Plaintiff's Complaint[3].  *See* Ex. 1, Smith Report at 2 and Ex. 2, Smith Dep. at 15:12-16:17; 25:16-26:4.

To measure the alleged damages, Smith relies upon the most recent six months of Plaintiff's employment at Harris Teeter to project Plaintiff's future wages. With this information, he projects that Plaintiff will stay at the Harris Teeter position in the same role and salary with a net 1% yearly increase, until Plaintiff is 79. *See* Ex. 1, Smith Report at 3; Table 4.  He does not refer to or rely upon Plaintiff's extensive employment history in grocery retail, his history in store management, or his testimony that he continues to search for different employment.  *See* Ex. 5, Bartolo Dep. at 93:19-95:17; 97:11-99:19; Ex. 2, Smith Dep. at 51:2-12; 60:16-19.  Smith also fails to consider or compare compensation in the grocery retail industry at-large, and acknowledges he has no such expertise.  *See* Ex. 2, Smith Dep. at 58:17-20.

Smith's report also fails to contemplate Plaintiff's ability to earn incentive-based income at Harris Teeter, resigning himself to a lack of knowledge or information concerning that

---

[3] Seven of the Complaint's nine counts have been disproven as a matter of law.  Whole Foods has filed a Motion to Reconsider as to the remaining whistleblower counts.  If that is successful, Plaintiff's defamation claim fails under its own weight.

company's compensation offerings.   In fact, Smith has not reviewed a single Harris Teeter employment document; Plaintiff failed to provide him with any. *See* Ex. 1 at 2; Ex. 2, Smith Dep. at 18:12-16.  Indeed, Smith did not even know that Harris Teeter was a grocery store.  Smith Dep. at 9:17-10:2.  Despite this paucity of information, Smith opines that Plaintiff will suffer a net wage and benefit loss of $3,815,706 until age 67.  *See* Ex. 1 at 5.

The opinions set forth in the report also assume that, but for his termination, Plaintiff would have continued to work for Whole Foods for the remainder of his life, with a 3% salary growth rate in 2017 and 2018, and a 1% yearly salary increase after 2018, above inflation.  *See* Ex. 1 at 3; Ex. 2 at 23:19-24:17. Smith concedes that these 3% and 1% growth rate assumptions are based upon nothing more than Plaintiff's best-guess recollection that "he would receive pay increases annually, and could range up to 4%."  *Id.*

Smith's conclusions depend on averaging Plaintiff's income from 2012-2016, which included years Plaintiff received an EVA bonus (a varying unguaranteed bonus tied to the financial performance of the store and region in which he worked).  For the EVA bonuses, Smith relies upon Plaintiff's undisputedly incorrect assertion that he received yearly quarterly bonuses in February, May, August, November, and December and that Plaintiff "had never missed out on a bonus."  *See* Ex. 1 at 3. But the evidence indisputably demonstrates that Plaintiff failed to earn bonuses several times during his tenure with Whole Foods, *see* Ex. 4, Martinez Declaration, at 2, and the Court recently ruled that he was not entitled to a bonus in 2017.  *See* Dkt. 60, at p. 24.  Similarly, the past earnings average which Smith relies upon include the profit Plaintiff made on the exercise of Whole Foods stock, and assumes that Plaintiff will continue to have that stock in later years.  *See* Smith Ex. 2 at 28:6-30:8; 64:9-18.  Smith includes these assumed earnings at Whole Foods to compare to Plaintiff's unsupported projected Harris Teeter earnings, and then concludes that

9

Plaintiff's but-for damages total over $8 million should Plaintiff work until he is 79 years old.  *See* Ex. 1, Table 6.

**B.      Analysis of Smith Report Under Relevant Legal Standards**

Smith ignores undisputed relevant facts in the record (some disproven after his report was authored, others before), fails to consider basic pertinent information, relies upon speculation and assumption, and employs unreliable methodology in reaching his conclusions.

**1.      Smith's Conclusions are Based on Insufficient Data and Assumptions**

Because Smith's opinion is speculative, based upon insufficient facts and unsupported assumptions, it lacks foundation and should be excluded.  *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d at 568-69 is instructive.  There, an expert economist was precluded from testifying about his calculation of a decedent's projected income and value of real estate investments if the decedent survived a helicopter crash.  The economist presented multiple projected income scenarios, which relied upon the prospect that the decedent toy store owner would become a full-time consultant, based upon a one-time consult he provided, for which he was not paid, and conversations he had with his wife about the prospect.  The economist's opinion regarding the decedent's real estate investment increase was similarly baseless, and included real estate ventures the decedent might have pursued, and the projection of a single piece of real estate in the Virgin Islands with a yet to be constructed house, with an appreciation rate based upon Washington D.C. housing rates.  The Court excluded the expert's testimony, finding there was little basis in the record for the expert economist's conclusions which were based on "pure conjecture" and in citing *Daubert* and Fed. R. Evid. 702, the Court noted the specialized "knowledge" required, connotes "more than subjective belief or unsupported speculation." *Id*. at 569-70.

10

The Smith Report suffers these same infirmities. Smith concludes that Plaintiff is entitled to future lost wages and benefits by relying solely upon a one hour interview his staff conducted with Plaintiff, Plaintiff's W-2 forms ranging from 2012-2013, Plaintiff's tax returns ranging from 2012-2016, Plaintiff's October 10, 2017 Harris Teeter pay stub, and the Complaint. *See* Ex. 1, Smith Report at 2 and Ex. 2, Smith Dep. at 15:12-16:17; 25:16-26:4. Smith never spoke with Plaintiff. He never reviewed Whole Foods employment handbook, documents related to the EVA bonus, or any Whole Foods employment documents. *See* Smith Dep. at 22:9-23:18. And he was certainly not told that, contrary to Plaintiff's assertions during these proceedings, he never actually earned an EVA bonus during the second fiscal quarter of 2017. Or that he failed to earn one during several other quarters in the past. *See* Ex. 4, Martinez Dec., at 2.

Moreover, Smith never reviewed any Harris Teeter employment documents. He has no idea if Bartolo will receive bonuses or stock options at Harris Teeter, and he has no understanding of Bartolo's projected career path and chance for raises or advancement at Harris Teeter.

Nevertheless, with this limited information, Smith somehow concludes that Plaintiff will work, uninterrupted, for Harris Teeter for the next thirty years in the exact same position, and that Plaintiff will only receive a 1% salary increase (above inflation) per year for the next thirty years. *See* Ex. 1 at 3; Ex. 2 at 23:19-24:17. Smith has no basis to either include or exclude the possibility of profit sharing, stock options, raises or bonuses, or the opportunity for advancement because he did no research on these issues. Smith's construct of what Bartolo will earn over the next several decades is simply a guess.[4]

---

[4] Smith's guess that Bartolo will work for Harris Teeter for the rest of his career is undercut by Bartolo, who testified at his May 2018 deposition that he was looking for a new position and that he had sent "hundreds" of applications. (*See* Ex. 5, Bartolo Dep. at 93:19-95:17; 97:11-99:19; 108:5-8.) In support of these applications, Plaintiff noted that he has the ability to "motivate,"

11

Adding one assumption on to another, Smith then concludes that Plaintiff's $75,000 salary will only increase a net 1% per year after 2018, for Plaintiff's entire life. *See* Ex. 1 at 4. Smith's guess at Bartolo's alleged net 1% per year salary increase fails to consider Plaintiff's self-professed abilities, and relevant market conditions. While acknowledging that it is possible for Plaintiff to receive a bonus at Harris Teeter, he simply refuses to make any allowance for this possibility. Smith Ex. 2 at 52:1-4. Smith also fails to consider or compare compensation or compensation growth trends in the grocery retail industry and acknowledges he has no such expertise. *Id*. at 58:17-20.

Not only does Smith underestimate Plaintiff's future employment prospects and earning potential, he overestimates the wages Plaintiff would have earned but-for the termination, and assumes, without evidence, that Plaintiff will be employed by Whole Foods until he is 79 years old. *See* Ex. 1, generally.

First, the calculation of Plaintiff's future salary is premised on Plaintiff always receiving an EVA bonus. When he was advised by Whole Foods' counsel at his deposition that Whole Foods contended that the bonus was not earned in 2017, he did not care, and responded:

> I just assumed that the average year would prevail, and you'll always find a year that's above average or below average, but I've just assumed that even though 2017, or any year you to care to name, wasn't a great year, then on average he's get what he had in the past. Now, if a trier of fact doesn't like that assumption, they can tear up my report. *See* Ex. 2, 43:18-44:1.

This is not the basis of an admissible expert opinion. This is guesswork and simple math, neither of which are helpful to the jury, or admissible. *Griffo*, 2018 WL 6265067 at *6 (Smith's opinion

---

"drive sales," and run "the top 3 stores in company at 1.5M weekly sales with 15% of sales net income." *See* Ex. 7, Sprouts Response at 14. Bartolo's claimed credentials are inconsistent with Smith's dour view of Plaintiff's prospects to either be hired elsewhere, earn more, or be promoted.

amounts to little more than an assertion that he is an expert); *see also Price v. Folks*, 2016 WL 4138209 at *6 (Nev. Dist. Ct. 2016) Smith was excluded from a trial about lost wages and benefits when he "did little, if any, verifying" of the plaintiff's statements with "reliable sources of information."

Furthermore, when pressed whether it was factored into his consideration that the store must remain profitable in order for one to receive an EVA bonus, Smith responded:

> They just ultimately need to reward talent. That's just a basic economic principle that just about every grandmother could understand or any member of a jury. Just because one program doesn't provide enough money, doesn't mean that they won't in the long-run figure out a way to have another program compensate him, so in the long-run he gets what he needs to properly reward him in the grand economic marketplace in the United States, because if they don't, they'll lose their employees. *See* Ex. 2, 32:16- 34:4-15.

Again, this is pure speculation by Smith.  He cites to no study or body of knowledge, nor can he claim to rely upon his expertise with regard to Whole Foods' practices, or in the retail industry because he admits that he has none.  Smith's opinion lacks any basis.

The calculation of the Plaintiff's profit of his exercise of stock is also considered for Smith's assumption of Plaintiff's future wage loss.  Yet when asked if it impacted his calculation that the sale of Whole Foods to Amazon meant that there would no longer be such stock options granted, he responded "no" and that Whole Foods would find some other way of rewarding its employees.  *See* Ex. 2 at 28:6-30:8; 64:9-18; 65:3-13.  Once again, this is rank speculation that cannot be the basis for an admissible expert opinion.  *Castrillon*, 2015 WL 3448947 at *2.

Smith's guesswork that Plaintiff would have received an average of the prior years' salary and bonuses, whether or not he was entitled to any bonus or stock, and without bothering to verify or provide any basis for this conclusion, is so easily refuted that it is fatal to his cause. While Smith apparently believes his experience as an economist affords him license to present to the jury baseless assertions, the rules of evidence hold otherwise.  *See, e.g., Little v. Washington*

13

*Metropolitan Area Transit Authority*, 249 F. Supp. 3d 394, 414 (D.D.C. 2017) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"); *see also Daubert v. Merrell Dow Pharm., Inc*., 43 F.3d 1311, 1319 (9th Cir. 1995) (when assessing the bases of an expert's conclusions, the court must do more than "take the expert's word for it").

### 2.    Smith's Methodology is Unreliable

Expert testimony is not admissible and must be excluded if the testimony is not the product of reliable principles and methods or if the evidence is based upon insufficient facts or data. Fed. R. Evid. 702; *see Keys v. WMATA*, 577 F. Supp. 2d 283, 285 (D.D.C. 2008).

Preliminarily, Smith's calculations assume that Plaintiff will work until the age of 79, simply because that is his average life expectancy as an American male. But Smith provides no explanation for his assumption that, unlike most Americans, Plaintiff will never retire. When confronted with this deficiency, Smith hardly even attempted to defend it. Rather, he testified "I leave it to the trier of fact to determine when they should draw a line and decide he would no longer be entitled to pay past that point. I don't have an opinion about that point." *See* Ex. 2, 45:8-47:3. That explanation refutes any purported "expert" opinion in this regard and leaves it to the jury to figure it out, when the jury is similarly unqualified to determine when Plaintiff will retire. *See In Re Air Crash Disaster*, 795 F.2d at 1233 (reversing the admission of expert testimony on the grounds that "the jury will give it 'the weight it deserves'" because "[t]his nigh reflexive explanation…can mask a failure by the trial judge to come to grips with an important trial decision"). Additionally, his claim that retirement at any age can be read off of Table 7, does not save his report. *See* Ex. 1 at 4. "While an expert may present multiple scenarios as a way of

14

compensating for uncertainty, doing so does not render expert testimony admissible if some or all of the scenarios have no factual basis." *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 94 (D.D.C. 2012) (citing *Joy v. Bell Helicopter Textron, Inc*., 999 F.2d at 569).

In calculating Plaintiff's future wages, Smith claims to utilize "past wage growth, interest rates, and consumer prices," yet he does not actually consider the majority of Plaintiff's past wage growth to opine on his future earnings. *See* Ex. 1 at 2. At the time the Smith Report was issued, Plaintiff had been separated from Whole Foods for less than one year and had worked at Harris Teeter for 6 months. Smith ignores Plaintiff's consecutive years of Whole Foods salaries for the future wage projection (but tellingly highlights the prior employment compensation for his purported lost wage calculation and incorrect assumptions about past and future EVA bonuses and stock), and instead uses only the prior six months' salary of $75,000 at Harris Teeter. While using this short employment history as a baseline, Smith then extrapolates and speculates that Plaintiff will stay in his current position as Assistant Manager at Harris Teeter until Plaintiff is 79 years old and will never receive more than a 1% raise above inflation, will never be promoted, and will never receive a bonus or any other compensation incentive. Smith never reasonably explains why he assumes that Harris Teeter will never promote Bartolo, nor why he does not assume that Harris Teeter will pay Bartolo whatever it takes to retain him. He simply states that because he assumed no promotion at Whole Foods, he would not get a promotion at Harris Teeter. Smith Dep. at 52:15-53:18. This is an unfounded assumption. Bartolo was a store team leader at Whole Foods, and only an assistant store manager at Harris Teeter. Assuming he will not be promoted ever during the next 20 plus years strains credulity and does not pass the standards for admissibility. *Joy,* 999 F.2d at 569-70. This flawed methodology would only serve to confuse and distract the jury.

15

*ACTIVE 47358481v3*

In sum, Smith's reliance upon assumptions, insufficient data, and speculation to determine Plaintiff's future lost wages and lost employee benefits warrants exclusion of his report and testimony. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("[W]here lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects.").

As described above, Smith has been precluded from testifying based upon his lack of reliable basis for his assumptions multiple times. *See Price,* 2016 WL 4138209 at *6.

Numerous courts have excluded Smith's opinion where he attempted to rely on nothing more than his "experience" as a basis for his unsupported opinions. Similarly, the Court should exclude his opinion in this case because he has once again turned to questionable assumptions, speculation, conjecture, and his "experience" as the cornerstone for an opinion that is unsupported by any admissible facts.

## III. SMITH'S TESTIMONY IS IRRELEVANT AND WILL NOT ASSIST THE TRIER OF FACT

The Smith Report's projections that Plaintiff would have worked until the year 2053 but-for his termination renders the report unhelpful to the jury.

A proffered expert should "bring to the jury more than what the lawyers can offer in argument. Indeed, the premise of receiving expert testimony at trial is that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230 at 1233 (*quoting* Fed. R. Evid. 702) (reversing district court's admission of expert's assertions that plaintiff would continue working for an additional forty years where he failed to consider the "future personal choices [the plaintiff] might make to avoid work-related health or stress problems later in his career" because "customary deference" to district court admissions of evidence "assume[ ] that the trial judge actually exercised his discretion").

16

The jury should not consider Smith's report because Smith's opinions will not assist it as required under Fed.R.Evid. 702.  Smith not only fails to provide a factual basis for the projection of years Plaintiff will work, he relies upon assumptions that are inconsistent with the facts and the record.  His serial mantra that the jury will "draw the appropriate line" in considering his unlikely, unproven assertions provides no answer.  *See In Re Air Crash Disaster*, 795 F.2d at 1233; *see also* Ex. 2, 43:18-44:1 ("Now, if a trier of fact doesn't like that assumption, they can tear up my report.").  Smith's testimony "lacks a factual basis" and is therefore unhelpful and inadmissible. *See Glisson v. Correctional Medical Services, Inc.* 2018 WL 6807295 at 5 (citing *Castrillon v. St. Vincent Hospital and Health Care Center*, 2015 WL 3448947 at 2).[5]

At best, Smith made up two calculations based on speculation and assumptions and did the math.  That is inappropriate.  A jury does not need expert testimony for what would be a simple math calculation.  *See Crawford v. Franklin Credit Management*, 2015 WL 13703301 at 6 (Smith's testimony as to the equity plaintiff held in her home was excluded and the court found that the jury was "fully capable of performing the same simple mathematical calculation that Smith performs in his report").  "[A]n expert ... must testify to something more than what is obvious to the layperson in order to be of any particular assistance to the jury." *Bazarian Int'l Financial Assoc., LLC v. Desarrollos Aerohotelco, C.A.,* 315 F. Supp. 3d 101, 117–18 (D.D.C. 2018) (citing *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998)).  Smith's opinion and report offers none of

---

[5] Smith's Report is also unnecessary for determining any funds that Plaintiff might have been entitled to at the time of his termination.  Whole Foods undisputedly paid Plaintiff $7,306.26 in salary earned during the most recent pay period, $1,084.51 relating to stock options, $135,408.41 in unused paid time off he accumulated over the years, and $15,777.55 for the most recent quarterly EVA Bonus in 2016 prior to his termination.  *See* Ex. 6, Grady Dec. at 7.

that.  Thus, even notwithstanding Smith's questionable assumptions and methodologies, his report should be excluded because it would be unhelpful to any trier of fact.

## **CONCLUSION**

For the foregoing reasons, the Smith Report should be stricken and Smith should not be permitted to testify at any stage during the trial in this matter.


Dated  November 26, 2019                    Respectfully Submitted,

                                            **GREENBERG TRAURIG, LLP**

                                            By: */s/Gregory J. Casas*
                                                 Gregory J. Casas
                                                 Bar No. 455329
                                                 300 West 6th Street, Suite 2050
                                                 Austin, Texas 78701
                                                 Email:  casasg@gtlaw.com
                                                 Telephone: 512.320.7200
                                                 Facsimile: 512.320.7210


                                                 Michael A. Pusateri
                                                 Bar No. 1005463
                                                 2101 L Street, N.W., Ste. 1000
                                                 Washington, DC 20037
                                                 Email:  pusaterim@gtlaw.com
                                                 Telephone:  202.331.3100
                                                 Facsimile:  202.331.3101

                                                 **WHOLE FOODS MARKET SERVICES, INC.**
                                                 John H. Hempfling, II
                                                 (Admitted *Pro Hac Vice*)
                                                 Vice President, Associate General Counsel,
                                                 Litigation
                                                 828 West Sixth Street, Suite 200
                                                 Austin, Texas 78703
                                                 Email: john.hempfling@wholefoods.com
                                                 Telephone:  512.542.0213

                                                 *Attorneys for Defendant Whole Foods Market*
                                                 *Group, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of November, 2019, I caused the foregoing to be served on all parties of record via the Court's electronic filing system.

*/s/Gregory J. Casas*

Gregory J. Casas

19